QUINN EMANUEL URQUHART & SULLIVAN, LLP
Dominic Surprenant (Bar No. 165861)
dominicsurprenant@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

Attorneys for BRANDI GARRIS, JOHN SWITZER and JASON TEAGUE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDI GARRIS, JOHN SWITZER *and* JASON TEAGUE,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES *and* LOS ANGELES HOUSING AND COMMUNITY INVESTMENT DEPARTMENT, f/k/a LOS ANGELES HOUSING DEPARTMENT,<br><br>Defendants | CASE NO. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**FOR DECLARATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTION AND DAMAGES PURSUANT TO 42 U.S.C. § 1983** |

Plaintiffs Brandi Garris and Jason Teague, as individuals and as proposed class representatives for all putative class member landlords owning rental residential properties subject to Los Angeles Housing Code §§ 161.101 through 161.906 ("Inspection Ordinance") during the class period, and Plaintiff John Switzer, as an individual and as a proposed class representative for all putative class member renters who paid inspection fees pursuant to the Inspection Ordinance during the class period, file this action against Defendants the City of Los Angeles ("the City") and the Los Angeles Housing and Community Investment Department ("L.A. Housing"), for violation of 42 U.S.C. § 1983.

The City's Inspection Ordinance is facially unconstitutional for two reasons. First, it purports to be an administrative search scheme, "that is, searches conducted as part of a general regulatory scheme in furtherance of an administrative purpose, rather than as part of a criminal investigation to secure evidence of crime." *U.S. v. $124,570 U.S. Currency*, 873 F.2d 1240, 1243 (9th Cir. 1988). Its stated purpose is avoid unsafe and unhealthy conditions in the City's rental residential apartments. The Inspection Ordinance, however, empowers all city employees conducting these ostensibly "administrative" searches to exercise all the powers of law enforcement officers, including seizing evidence and making arrests. An administrative scheme that allows systematic searches for evidence of crimes — as the Inspection Ordinance expressly does —facially violates the Fourth Amendment rights of those subject to the scheme. *See U.S. v. McCarty*, 648 F.3d 820, 830, 833-834 (9th Cir. 2011); *U.S. v. Bulacan*, 156 F.3d 963, 967-968, 971, 973 (9th Cir. 1998), *U.S. Currency*, 873 F.2d at 1244, 1247. Second, even if the Inspection Ordinance is treated as an administrative scheme, it facially violates the Fourth Amendment in that it does not allow the landlord or rental tenant "precompliance review" before a neutral decision-maker if he or she objects to the search, as expressly required by *City of Los Angles v. Patel*, 135 S. Ct. 2243 (2015) (search ordinance of the City of Los Angeles concerning hotel guest registries facially unconstitutional due to failure to provide precompliance review). Rather, if the landlord or tenant does not allow the search, he or she is guilty of a criminal misdemeanor and is subject to a fine of $1,000 a day, without ever having a hearing before a neutral decision maker. Under black-letter law, these penalties for non-compliance renders every "consent" to an inspection any class member has given ineffective as unlawfully coerced, so that every search conducted by the City violates the Fourth Amendment.

With knowledge of their own conduct and such matters as to which this Court may take judicial notice, and upon information and belief as to all others, Plaintiffs allege as follows:

-2-

## Nature of the Action

1. Pursuant to the Inspection Ordinance, each of the over 700,000 rental residential apartments in the City must be inspected once every three years, or more often if the relevant City officials deem it appropriate. (Exhibit A to this Complaint attaches the true and correct text of the current Inspection Ordinance.)

2. The Supreme Court in *Patel* ruled that before private materials protected by the Fourth Amendment may be searched (in that case, hotel registries containing guest information) pursuant to an administrative search scheme when the target of the search objects, or before a party may be punished for non-compliance, a party is constitutionally entitled to "precompliance review," that is, review before a neutral decision-maker. *See Patel*, 135 S.Ct. at 2451 & 2454.

3. The Inspection Ordinance fails to provide precompliance review. Pursuant to it, searches of over 700,000 private residences occur without precompliance review. What is more, non-complying landlords or tenants are subject to a fine of a $1,000 per day and are deemed "guilty" of criminal misdemeanor violations, again without precompliance review. *See* Inspection Ordinance, § 161.905 & .906.

4. The Inspection Ordinance empowers the city officials or employees inspecting the over 700,000 private rental residence to act as "law enforcement officer[s]" and authorizes them "to make arrests without a warrant." *See id.* §§ 161.405 & .410.1 Once inside a private residence, in their capacity of "law enforcement officers," the city inspectors would be empowered to seize any evidence of illegal conduct "in plain sight." *Bulacan*, 156 F.3d at 968. In other words, the Inspection Ordinance in reality authorizes wholesale searches by law enforcement officers of every rental residence in the City without any showing of probable cause, which is facially unconstitutional under the Ninth Circuit authorities cited above.

5.    Plaintiffs seek a declaratory judgment that the Inspection Ordinance is facially unconstitutional under *McCarty*, *Bulacan, U.S. Currency, Patel* and the Supreme Court cases on which they rely; a preliminary and permanent injunction against Defendants' enforcement of the Inspection Ordinance until such time as it is modified to make it constitutionally compliant; damages; and their counsel's reasonable attorney's fees and expenses.  Under controlling doctrine, all fees a public entity collects pursuant to an unconstitutional statute must be reimbursed to the citizens who paid the unconstitutional fees.  *See California State Outdoor Advertising Ass'n v. Department of Transportation*, 2006 U.S. Dist. LEXIS 11174 (E.D. Cal. March 16, 2006) at * 15 (citing *Jordan v. Department of Motor Vehicles*, 75 Cal. App. 4th 449, 89 Cal. Rptr. 2nd 333 (1999) and three other California decisions).

6.    As class representatives, Plaintiffs seek to recover all inspection fees and other related fees and fines paid to the City pursuant to the Inspection Ordinance during the class period — that is, for the two years prior to the filing of this Complaint and any such fees the City collects from the filing of this Complaint until this matter is fully and finally resolved.

7.    A person's right to be free of unwanted government searches is one of the most cherished and protected rights under the Constitution.  Courts will not allow encroachments, even if seemingly minor, to infringe it:

> It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure.  This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed.  A close and literal construction deprives them of half their

> efficacy, and leads to gradual depreciation of the right, as
> if it consisted more in sound than in substance. It is the
> duty of courts to be watchful for the constitutional rights
> of the citizen, and against any stealthy encroachments.

*Boyd v. U.S.*, 116 U.S. 616, 635 (1886). The "encroachments" at issue here are neither minor nor mild. The Fourth Amendment privacy rights of Plaintiffs and more than 700,000 putative class members have been sacrificed in the name of administrative convenience. This suit seeks to right that wrong.

## Parties

8. Plaintiff Brandi Garris is a resident of Pasadena, California and a landlord owning rental residential apartments subject to the Inspection Ordinance.

9. Plaintiff Jason Teague is a resident of Venice, California and a landlord owning rental residential apartments subject to the Inspection Ordinance.

10. Plaintiff John Switzer is a resident of Los Angeles, California and a tenant who paid inspection fees pursuant to the Inspection Ordinance.

11. Defendant the City of Los Angeles is charter city located in the County of Los Angeles. The current charter was adopted on June 8, 1999 and has been amended many times since. The City has many departments and appointed officers, including Defendant L.A. Housing.

## Plaintiffs' Compliance with the City's Administrative Code § 350

12. On October 10, 2016, Plaintiffs, through counsel, submitted claims to the City pursuant to the City's Administrative Code § 350 in an eight-page single spaced letter closely arguing why the Inspection Ordinance was unconstitutional. (Exhibit B to this Complaint attaches a true and correct copy of that letter.)

13. On November 22, 2016, the City denied those claims in a one-page form letter providing no analysis. (Exhibit C to this Complaint attaches a true and correct copy of that letter.)

**Jurisdiction and Venue**

14. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this action arises under the Fourth Amendment to the United States Constitution; under 28 U.S.C. § 1343(a)(4), in that it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983; under 28 U.S.C. § 2201(a), to secure declaratory relief; under 28 U.S.C. § 2202, to secure preliminary and permanent injunctive relief and damages; and under 42 U.S.C. § 1988 to grant Plaintiffs' prayer for relief regarding the recovery of costs, including damages, restitution and reasonable attorney fees.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as (a) Defendants are situated and transact business within this District; and (b) the conduct complained of occurred within this District.

**Legal Framework**

**A.    The Facial Unconstitutionality of An Administrative Search Scheme That Allows Systematic Searches For Evidence of Criminal Behavior**

16. "The Fourth Amendment protects against unreasonable and seizures of people and their effects. U.S. Const. amend. IV." *United States v. McCarty*, 648 F.3d 820, 830 (9th Cir. 2011).

17. "Searches and seizures are ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *Id.* (quotations omitted).

18. It is, however, "well established that searches conducted as part of a general regulatory scheme, done in furtherance of administrative goals rather than to secure evidence of a crime, may be permissible under the Fourth Amendment without a particularized showing of probable cause." *United States v. Bulacan*, 156 F.3d 963, 967 (9th Cir. 1998).

19. "Because these [administrative] searches require no warrant or particularized suspicion, an administrative search scheme invests the Government

with the power to intrude into the privacy of ordinary citizens.  This power carries with it a vast potential for abuse." *Id.*

20. "Therefore, courts must take care to ensure that an administrative search is not subverted into a general search for evidence of crime." *Id.*

21. "This Court has repeatedly warned against the potential dangers of administrative searches and noted that courts must guard against the danger that a permissible administrative search will be subverted into a general search for evidence of crime." *Id.* at 973.

22. "The risk that administrative searches will be infected by general law enforcement objectives, and the concomitant need for the courts to maintain vigilance, is a recurrent theme in our cases and those of other courts." *U.S. Currency*, 873 F.2d at 1244.

23. "Further, an administrative search scheme has long term implications. Therefore, in determining whether the scheme is valid, the Court should consider the entire class of searches permissible under the scheme, rather than focusing on the facts of the case before it." *Id.* at 967-968.

24. "[A] unlawful secondary purpose invalidates an otherwise permissible administrative search scheme." *Id.* at 969, citing *U.S. Currency*, 873 F.2d at 1247.

25. "'[W]hen an administrative search scheme encompasses both a permissible and impermissible purpose, and when the officer conducting the search has broad discretion in carrying out the search, that search does not meet the Fourth Amendment's reasonableness requirement.'" *McCarty*, 648 F.3d at 833, quoting *Bulacan,* 156 F.3d at 971.

26. When the improper purpose is "explicit" in the language of the statute, it operates in a "programmatic" fashion and invalidates the statute on its face. *McCarty*, 648 F.3d at 833-834.

B. **The Facial Unconstitutionality of An Administrative Search Scheme Of Private Residences That Fails to Provide Precompliance Review when the Party Subject to the Search Objects or before an Offending Party Is Subject To Liability for Non-Compliance**

27. An administrative inspection scheme that provides the search will go forward over the target's objection or non-compliance will subject the target to potential criminal or civil liability without providing for an opportunity for "precompliance review" before a neutral decision maker is facially unconstitutional. *Patel*, 135 S.Ct. at 2447, 2449.

28. "Precompliance review" is an opportunity for the party objecting to the search to be heard before a "neutral decisionmaker" before the search goes forward or before the non-complying party faces civil or criminal penalties. *Id.* at 2453.

29. Citing past Supreme Court precedent, *Patel* explained (*id.* at 2452):

> The Court has held that absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker. *See See* [v. City of Seattle], 387 U.S. [541] at 545 [(1967)]; [Donovan v.] *Lone Steer* [Inc.], 464 U.S. [408], at 415 [(1984)] (noting that an administrative search may proceed with only a subpoena where the subpoenaed party is sufficiently protected by the opportunity to 'question the reasonableness of the subpoena, before suffering any penalties for refusing to comply with it, by raising objections in an action in district court"). . . . While the Court has never attempted to prescribe the exact form an opportunity for precompliance review must take, the City [of Los Angeles] does not even attempt to argue that §

41.49(3)(a) affords hotel operators any opportunity whatsoever. Section 41.49(3)(a) is, therefore, facially invalid.

30. In many, if not most cases, actually providing precompliance review under the Inspection Ordinance (as modified to make it constitutional) would not be necessary.[1] If neither the landlord nor the tenant objects to an inspection request pursuant to a constitutionally-compliant Inspection Ordinance, the inspection could go forward. *Cf. id.* at 2454.

31. Where the party to the intended search does object, however, the search may not go forward, nor may the objecting party be subject to the potential of criminal or civil liability, prior to the objecting party having an opportunity to present his or her objections to a neutral decisionmaker. *Id.* at 2452 ("we hold that [the challenged City's statute allowing the inspection of hotel's registers of guests] is facially unconstitutional because it fails to provide hotel operators with an opportunity for precompliance review").

32. The Inspection Ordinance punishes the landlord or tenant who withholds consent, deeming them "guilty of a misdemeanor" and subject to a $1,000 a day fine. The misdemeanor violation and $1,000 a day fine are expressly *not* limited to landlords, but to "[a]ny person or entity violating" it. (§ 161.905 & .905.) Under well-established doctrine, the threat of criminal and financial liability renders any consent given to a search by any class member coerced and ineffective.

33. Consent is an exception to the warrant requirement under the Fourth Amendment. For the exception to apply, however, the consent must be valid and it is not valid when coerced. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 228

---

[1] Counsel for Plaintiffs has explained to counsel for the City how the Inspection Ordinance could be modified to make it constitutional. *See* Exh. C at 7-8; *see also* letter dated January 18, 2017 at 2-4 (a true and correct copy of which is attached to this Complaint as Exhibit D).

1 (1973) ("the Fourth and Fourteenth Amendments require that consent not be coerced, by explicit or implicit means, by implied threat or covert force . . . . For, no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed").

34. The material at issue in *Patel* was information about hotel guests. *Id.* at 2448. While this information, as *Patel* found, is protected by the Fourth Amendment, the Inspection Ordinance targets the core of Fourth Amendment privacy protection: private residences. "The Fourth Amendment protects an individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." *Payton v. New York,* 445 U.S. 573, 589 (1980).

**Factual Allegations**

**A.    The Inspection Ordinance**

35. Powers, including Police Powers, of the General Manager and Requirements for Inspection of Rental Residential Units. The Inspection Ordinance requires landlords of all residential rental units within the City to pay a "regulatory fee" (currently $43.32) per rental unit per year. (§ 161.352.)

36. A "General Manager" appointed by the City is responsible for the enforcement of the Inspection Ordinance. (§ 161.401-404.)

37. The General Manager or his or her representatives "shall have the powers of a law enforcement officer" (§ 161.405) and are empowered "to make arrests without a warrant" (§ 161.410.1).

38. Each residential rental unit must be inspected "at least once every three years," although the General Manager or his or her representatives can require more frequent inspections. (§ 161.353.)

39. Authority to Inspect Residential Rental Units, Including When the Landlord and/or the Renter Object. The General Manager or his or her

representative are "authorized to enter the premise at any reasonable time." (§ 161.601.)

40. If either the landlord or the renter resident refuses to allow the inspection, "the General Manager shall have recourse to every remedy provided by law to secure lawful entry and inspect the premise, including but not limited to securing an inspection warrant pursuant to California Code of Civil Procedure Sections 1822.50 through 1822.57."

41. The procedure for obtaining an inspection warrant pursuant to CCP §§ 1822.50 through .57 is *ex parte*.[2] No notice would be provided in this context to either the landlord or the renter resident.

42. If the General Manager "has reasonable cause" to think public safety requires an immediate inspection, he or she is authorized "to immediately enter and inspect the premises" without obtaining consent or an inspection warrant.

43. If a complaint has been made about a rental residence, the "General Manager may inspect" not only the residence about which the complaint was made "without prior notice to the landlord or tenants" but also "the common areas of the building *or other dwelling units subject to this article*". (§ 161.603; emphasis added.)

44. <u>Civil Penalties and Fines.</u> "Any person" who violates the Inspection Ordinance "shall be liable for a civil fine of up to $1,000 for each day the violation is committed." (§ 161.905.)

---

[2] The *ex parte* nature of CCP §1822.50 Inspection Warrants is obvious from the face of the statute. *See also* "Access, Entry, and Warrants," by Lisa Brown, Assistant Counsel for Enforcement, Cal/EPA, www.wrcb.ca.gov./academy/ documents/stormwater_ enforcement/brown-access-entry-warrants.pdf. Referring to the CCP inspection warrants, it states (at unnumbered page 37): "It is an 'ex parte' proceeding, no requirement to give notice, no right for 'defendant' or his/her lawyer to be there."

45. <u>Misdemeanor Liability.</u>  "Any person violating any of the provisions, or failing to comply with any of the requirements of this article shall be guilty of a misdemeanor except" for exceptions irrelevant here.  (§ 161.906, second paragraph.)

### B.   Plaintiffs' Individual Claims

46. Plaintiffs' individual claims against the City are set forth in Exhibit B to this Complaint at pages 3-4 and the exhibits therefore, and are adopted by reference as though fully set forth herein.

### C.   Class Definitions and Class Allegations

47.  Plaintiffs bring this action on behalf of themselves and all other similarly situated individuals and seek class certification under Federal Rule of Civil Procedure 23.

48. Class Plaintiffs Garris and Teague seek to represent a class ("Landlord Class") defined as follows:

> All landlords who, between the applicable statute of limitations and the present, owned residential rent properties subject to the Inspection Ordinance and paid a fee pursuant to the Inspection Ordinance.

49. Class Plaintiff Switzer seek to represent a class ("Renter Class") defined as follows:

> All renters who, between the applicable statute of limitations and the present, paid a fee pursuant to the Inspection Ordinance.

50. As used herein, the term "Landlord Class Members" shall mean and refer to the members of the Landlord Class described above.

51. As used herein, the term "Renter Class Members" shall mean and refer to the members of the Renter Class described above.

52. Excluded from the Class are Defendants, their employees, agents, and attorneys, and the Court.

53. Each of the proposed Classes is composed of hundreds of thousands of persons. The Landlord Class Members and Renter Class Members are so numerous that joinder of all members would be unfeasible and impractical.

54. The constitutional violations alleged in this Complaint are not contingent on any individualized interaction between class members and Defendants but instead arise from the face of the Inspection Ordinance.

55. There are common questions of law and fact as to the Class Members that predominate over questions affecting only individual members, including but not limited to:

  (a) Whether the Inspection Ordinance facially violates the Fourth Amendment under *McCarty*, *Bulacan* and *U.S. Currency* and the cases on which they rely because its allows systematic inspection of private residence for evidence of criminal conduct without probable cause;

  (b) Whether the Inspection Ordinance facially violates the Fourth Amendment under *Patel* and the cases on which it relies because it authorizes administrative searches of private residences and imposes both monetary penalties and criminal misdemeanor liability while affording no opportunity for precompliance review before a neutral decisionmaker;

  (c) Whether any purported "consent" to any search conducted pursuant to the Inspection Ordinance was ineffective as coerced;

  (d) Whether Plaintiffs, Landlord Class Members and Renter Class Members are entitled to declaratory and injunctive relief; and

  (e) Whether Plaintiffs, Landlord Class Members and Renter Class Members are entitled to refunds of all fees they paid pursuant to the Inspection Ordinance.

56. The Landlord Class Members and the Renter Class Members are readily ascertainable in the books and records, both electronic and paper, of Defendants.

57. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Joinder of all Landlord Class Members and Renter Class Members is not practicable. Questions of law and fact common to Plaintiffs and Members of both Classes predominate over any questions only affecting individual members of the Classes. Each Class Member has been damaged by reason of the City's unconstitutional Inspection Ordinance. Certification of the Landlord Class and the Renter Class will allow those similarly situated persons to litigate their claims in the manner most efficient and economical for Plaintiffs, Class Members, Defendants and the judiciary. The expense and burden of litigation of individual lawsuits by individual class members would dissuade most Members of both Classes from vindicating their Fourth Amendment rights.

58. Plaintiffs Garris and Teague are members of the Landlord Class.

59. Plaintiff Switzer is a member of the Renter Class.

60. The claims of Plaintiffs Garris and Teague are not only typical of all Landlord Class Members, they are identical.

61. The claims of Plaintiff Switzer is not only typical of all Renter Class Members, they are identical.

62. All claims of Plaintiffs and the Landlord Class and Renter Class are based on the exact same legal theories.

63. Plaintiffs Garris and Teague have no interest antagonistic to, or in conflict with, the Landlord Class.

64. Plaintiff Switzer has no interest antagonistic to, or in conflict with, the Renter Class.

65. Plaintiffs Garris and Teague are qualified to, and will, fairly and adequately protect the interests of each Landlord Class Member, because Plaintiffs were subject to the Inspection Ordinance as were all other members of the Landlord Class.

66. Plaintiff Switzer is qualified to, and will, fairly and adequately protect the interests of each Renter Class Member, because Mr. Switzer made inspection fee payments pursuant to the unconstitutional Inspection Ordinance as did all other members of the Renter Class.

67. Plaintiffs will thoroughly and adequately protect the interests of the Landlord Class and Renter Class, having retained qualified and competent legal counsel with substantial experience in class action litigation to represent themselves, the Landlord Class and the Renter Class.

68. Plaintiffs' counsel is the largest litigation-only law firm in the world, with three offices in California (Los Angeles, San Francisco and Redwood Shores), as well as offices in Seattle, Houston, Chicago, New York and Washington D.C., and in the United Kingdom, Germany, Belgium, France, Switzerland, Russia, People's Republic of China, Hong Kong, Singapore and Australia.  Plaintiffs' counsel have substantial resources to pursue this matter.

69. Common questions will predominate and there will be no unusual manageability issues.

70. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants have acted in a way that is generally applicable to Plaintiffs and Landlord Class Members and Renter Class Members, making class-wide declaratory and injunctive relief appropriate and necessary.

**DECLARATORY AND INJUNCTIVE RELIEF**

71. Plaintiffs incorporate by reference each of the foregoing allegations as if fully set forth herein.

72. An actual controversy has arisen and presently exists between Plaintiffs, putative Landlord Class Members and putative Renter Class Members, and Defendants concerning the Fourth Amendment rights to privacy of Plaintiffs and putative class members subject to past and future inspections by Defendants pursuant to the Inspection Ordinance.

73. A judicial declaration of their rights and the unconstitutional nature of the Inspection Ordinance is necessary and appropriate at this time. Specifically, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, this Court should declare §§ 161.405, .410.1, .410.2, .601, .603, .905 & .906 of the Inspection Ordinance unconstitutional on their face.

74. Pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, this Court should issue a preliminary and permanent injunction prohibiting Defendants from enforcing §§ 161.405, .410.1, .410.2, .601, .603, .905 & .906 of the Inspection Ordinance and searches and policies relating to them in order to protect Plaintiffs and putative Landlord Class Members and Renter Class Members from further and ongoing violation of their privacy rights under the Fourth Amendment.

**FIRST CAUSE OF ACTION**

**Violation of the 42 U.S.C. § 1983**

75. Plaintiffs incorporate by reference each of the foregoing allegations as if fully set forth herein.

76. 42 U.S.C. § 1983 states in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

77. A municipality and its departments are "persons" for purposes of Section 1983. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989).

78. By adopting and/or enforcing the Inspection Ordinance, Defendants subjected all Landlord Class Members and Renter Class Members to the identical deprivation of rights of privacy guaranteed by the Fourth Amendment.

79. By adopting and/or enforcing the Inspection Ordinance, Defendants were acting under color of law.

80. All members of the Landlord Class and the Renter Class who paid inspections fees pursuant to the Inspection Ordinance were harmed in identical ways.

81. The Inspection Ordinance violates facially violates the Fourth Amendment because it empowers police officers to search private residence without probable cause and because it subjects both landlords and renters to unconstitutional searches, penalties, fines and criminal misdemeanor liability without precompliance review before a neutral decision maker.

82. Plaintiffs seek reinstitution of all fees and penalties they and all Landlord Class Members and Renter Class Members paid pursuant to the Inspection Ordinance, which is well over $75,000 and likely over $60 million in the two years prior to the filing of this Complaint.

## PRAYER FOR RELIEF

83. Plaintiffs Garris and Teague, on behalf of themselves and the Landlord Class, and Plaintiff Switzer on behalf of himself and the Renter Class, requests the following relief:

| | | |
|---|---|---|
| 1 | (a) | An order certifying the Landlord Class and appointing Plaintiffs Garris and Teague as Representatives of the Landlord Class; |
| 2 | | |
| 3 | (b) | An order certifying the Renter Class and appointing Plaintiff Switzer as Representatives of the Renter Class; |
| 4 | | |
| 5 | (c) | An order certifying the undersigned counsel as Class Counsel for the Landlord Class and Renter Class; |
| 6 | | |
| 7 | (d) | An order enjoining Defendants from enforcing §§ 161.405, .410.1, .410.2, .601, .603, .905 & .906 of the Inspection Ordinance until those sections are revised to comport with the requirements of the Fourth Amendment; |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | (e) | reimbursement by Defendants of all inspection fees paid pursuant to the Inspection Ordinance by Landlord Class Members during the relevant class period; |
| 12 | | |
| 13 | | |
| 14 | (f) | reimbursement by Defendants of all inspection fees paid pursuant to the Inspection Ordinance by Renter Class Members during the relevant class period; |
| 15 | | |
| 16 | | |
| 17 | (g) | reimbursement by Defendants of all fines and penalties fees paid pursuant to the Inspection Ordinance by Landlord Class Members during the relevant class period; |
| 18 | | |
| 19 | | |
| 20 | (h) | reimbursement by Defendants of all fines and penalties fees paid pursuant to the Inspection Ordinance by Renter Class Members during the relevant class period |
| 21 | | |
| 22 | | |
| 23 | (i) | All reasonable and necessary attorneys' fees and costs pursuant to the Ninth Circuit's doctrine on recoverable and awardable attorneys fees in the class action context and pursuant to 42 U.S.C. § 1988; and |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

07299-00001/8645737.2

COMPLAINT

(j)     Such other relief that the Court may deem just and proper.

Dated:  February 22, 2017

By /s/ Dominic Surprenant
Dominic Surprenant
Attorneys for BRANDI GARRIS, JOHN SWITZER and JASON TEAGUE

-19-