QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Dominic Surprenant (Bar No. 165861)
  dominicsurprenant@quinnemanuel.com
  Michael Lombardo (Bar No. 311365)
  mikelombardo@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for BRANDI GARRIS, JOHN
SWITZER and JASON TEAGUE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDI GARRIS, JOHN SWITZER *and* JASON TEAGUE,<br><br>       Plaintiffs,<br><br>    vs.<br><br>CITY OF LOS ANGELES *and* LOS ANGELES HOUSING AND COMMUNITY INVESTMENT DEPARTMENT, f/k/a LOS ANGELES HOUSING DEPARTMENT,<br><br>      Defendants, | CASE NO. 2:17-cv-01452 MWF (Ex)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO THE COURT'S ORDER RE MOTION TO DISMISS CASE** |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ............................................................................................. 2

I.    EVERY INSPECTION IS COERCED AND NON-CONSENSUAL
UNDER CONTROLLING PRECEDENT. ...................................... 2

II.   THE COMPLAINT PROPERLY ALLEGES EVERY INSPECTION
IS UNCONSTITUTIONAL, BOTH UNDER *BULACAN* AND *PATEL*. ........ 3

    A.    Every Inspection Is Unconstitutional Under *Bulacan*. ......................... 3

    B.    Every Inspection Is Unconstitutional under *Patel*. ...................... 4

III.  UNDER CONTROLLING CALIFORNIA LAW, THE ENTITY
THAT RECEIVED FEES PURSUANT TO AN ILLEGAL STATUTE
MUST REFUND THOSE FEES TO THE PLAINTIFFS WHO PAID
THEM. ............................................................................................. 6

IV.   PLAINTIFFS HAVE STANDING BECAUSE THEY SUFFERED
INJURY IN FACT CAUSALLY RELATED TO THE CONDUCT
COMPLAINED OF WHICH WOULD BE REDRESSED BY THE
REMEDY THEY SEEK. ................................................................. 8

    A.    Standing Is Separate From The Merits. ................................. 8

    B.    Standing Turns On Three Constitutional Elements, All of Which
Are Met Here ........................................................................ 8

V.    PLAINTIFFS HAVE STANDING BECAUSE THE INSPECTIONS
FEES EXPRESSLY FUND CONDUCT THEY ALLEGE IS
UNCONSTITUTIONAL ................................................................. 9

VI.   THIS COURT WOULD HAVE TO MAKE NEW LAW TO FIND
THAT LANDLORDS DO NOT HAVE STANDING TO
CHALLENGE RENTAL INSPECTION ORDINANCES. ............ 10

VII.  IT IS PREMATURE TO CONSIDER SEVERABILITY PRIOR TO A
MERITS DETERMINATION, BUT IF THE COURT WERE TO DO
SO, IT SHOULD FIND NON-SEVERABILITY. .......................... 11

    A.    It Is Rarely Appropriate To Consider Severability Prior to a
Merits Determination. ......................................................... 11

    B.    If the Court Reaches Severability, It Should Find Non-
Severability Because It Would Have To Rewrite The Statute and
the Unconstitutional Aspects Are Not "Wholly Independent"
From The Fee But Instead "Inextricably Connected" To It. ............ 12

CONCLUSION ........................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*Baker v. City of Portsmouth*,
Case 1:14-cv-00512-SJD (S.D. Ohio Octo. 1, 2015) ....................................10, 11

*Brockett v. Spokane Arcades, Inc.*,
472 U.S. 491 (1985).................................................................................13

*Brower v. Village of Bolingbrook*,
735 F. Supp. 768 (N.D. Ill. 1990) ..............................................................11

*California State Outdoor Advertising Ass'n, Inc. v. Department of Transportation*,
2006 U.S. Dist. LEXIS 11174 (E.D. Cal. March 16, 2006).........................6, 7

*Camara v. Municipal Court of the City and County of San Francisco*,
387 U.S. 523 (1967)...............................................................................2, 3

*Carey v. Piphus*,
435 U.S. 247 (1978) ..................................................................................6

*City of Los Angeles v. Patel*,
135 S. Ct. 2443 (2015)....................................................................2-6, 9-15

*Crook v. City of Madison*,
168 So. 3d 930 (2015) .............................................................................11

*Dearmore v. City of Garland*,
400 F. Supp. 2d 894 (N.D. Tex. 2005) .......................................................11

*Figueroa v. United States*,
466 F.3d 1023, 1029 (Fed. Cir. 2006) ......................................................7, 8

*Flynn v. City and County of San Francisco*,
115 P.2d 3 (1941) ....................................................................................7

*Georgia Ass'n of Educators v. Harris*,
749 F. Supp. 1110 (1990) .......................................................................15

*Golden State Transit Corp. v. City of Los Angeles*,
773 F. Supp. 204 (C.D.Cal.1991) ...............................................................6

*Harp Advert. Of Illinois, Inc. v. Village of Chicago Ridge*,
1992 WL 386481 (N.D. Ill. March 13, 1992) ..............................................12

*Jordan v. Dept. of Motor Vehicles*,
89 Cal. Rptr. 2d 333 (1999) .......................................................................7

*Joytime Distributors and Amusement Co. v. State of South Carolina*,
528 S.E.2d 647 (S.C. Sup. Ct. 1999) .......................................................9-10

-ii-

*Lujan v. Defenders of Wildlife*,
  5094 U.S. 555 (1992)..................................................................8

*McKesson Corp. v. Division of Alcoholic and Tobacco, Department of
  Business Regulation of Florida*,
  496 U.S. 18 (1990)....................................................................7

*National Federation of the Blind of Texas, Inc. v. Abott*,
  647 F.3d 202 (5th Cir. 2011) ...................................................12

*Palmer v. City of Los Angeles*,
  96 Cal. Rptr. 3d 875 (2009) ....................................................15

*Robertson v. Wegmann*,
  436 U.S. 584 (1978).................................................................6

*Schneckloth v. Bustamonte*,
  412 U.S. 218 (1973).................................................................2

*Schultz v. Thorne*,
  415 F.3d 1128, 1139 (10th Cir. 2005) .....................................8

*Sokolov v. Village of Freeport*,
  420 N.E.2d 55 (1981) .............................................................11

*U.S. v. Bulacan*,
  156 F.3d 963 (9th Cir. 1998) ............................3, 4, 9, 12, 14

*U.S. v. McCarty*,
  648 F.3d 820 (9th Cir. 2011) ...................................................3

*Vitale v. City of Los Angeles*,
  57 P.2d 993 (1936) ..................................................................7

*Vivid Entertainment, LLC v. Fielding*,
  774 F.3d 566 (9th Cir. 2014) ...........................2, 13, 14, 15

*Whittington v. Maes*,
  655 Fed. Appx. 691 (10th Cir. 2016) .....................................7

*Whyte v. State of California*,
  294 P. 417 (1930) ...................................................................7

*Wilson v. City of Cincinnati*,
  346 N.E.2d 666 (1976) ..........................................................11

**<u>Statutory Authorities</u>**

42 U.S.C. § 1988...........................................................................6

42 U.S.C. § 1983......................................................................6, 8

Cal. Civ. Proc. Code § 161.352 .........................................7, 8, 9, 12

-iii-

Cal. Civ. Proc. Code § 161.405 ............................................................................4, 14

Cal. Civ. Proc. Code § 161.410.01 ........................................................................4, 14

Cal. Civ. Proc. Code § 161.601 ........................................................................4, 6, 14

Cal. Civ. Proc. Code § 161.603 ................................................................................14

Cal. Civ. Proc. Code § 161.905 ..............................................................................4, 7

Cal. Civ. Proc. Code § 161.906 ..............................................................................4, 7

Cal. Civ. Proc. Code § 1822.50 ..................................................................................5

Cal. Civ. Proc. Code § 1822.50-57 .........................................................................4, 14

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO THE COURT'S ORDER RE MOTION TO DISMISS CASE**

**<u>Preliminary Statement</u>**

The Court's Order re Motion to Dismiss Case (Doc. 20) asks whether "Plaintiffs have standing if, in fact, the only fees they paid were the yearly regulatory fees required under the Ordinance"; whether the severability clause "deprives  Plaintiffs of standing or otherwise affects their claims"; and whether Plaintiffs "were actually subjected to searches under the Ordinance to which they did not consent."  Order at 6-8.  As Plaintiffs demonstrate below:

- The Complaint cites Supreme Court precedent establishing that *every* inspection conducted pursuant to the Ordinance is coerced by threat of criminal and civil liability and hence is non-consensual.

- Plaintiffs allege and show below that *every* search conducted pursuant to the Ordinance is unconstitutional under *Bulacan* and *Patel*.

- The landlord plaintiffs (Ms. Garris and Mr. Teague) have standing because they paid a fee under threat of criminal and civil liability charged by a statute they allege to be unconstitutional.  No case has required more.

- Section 161.352 states that the "fee will be used to finance the costs of inspection and enforcement."  Under persuasive precedent, Plaintiffs have standing to recover fees paid to fund unconstitutional government activity. What is more, under California law, governing here, public entities do not have a right to keep the revenue derived from illegal ordinances.

- Given the foregoing, it is not surprising that in *every* case we have identified, landlords had standing to challenge rental inspection ordinances and in no case where the landlords sought recovery of fees paid pursuant to the ordinances was such recovery denied.

- Case law cautions against determining severability at the outset, prior to determination on the merits, because a court would be guessing about what portions of the statute will survive and hence is not in a position to conduct the severability analysis.

-1-

• Should the Court reach severability, it should decide that the presumption of severability is overcome because (a) the Court would have to resort to legislative rewriting to cure the *Patel* problem, and (b) the fee is not "wholly independent" from but instead "inextricability connected" with the statute's unconstitutionality, as its sole use is to fund inspections that are unconstitutional in every instance. *See Vivid Entertainment, LLC v. Fielding*, 774 F.3d 566, 574 (9th Cir. 2014).

In light of the importance of the issues raised by the Order, Plaintiffs respectfully request the Court set oral argument in the event the Court is prepared to grant any portion of the City's motion to dismiss.

### **Argument**

## I.   **EVERY INSPECTION IS COERCED AND NON-CONSENSUAL UNDER CONTROLLING PRECEDENT.**

The Complaint alleges that the Ordinance punishes the landlord or tenant who withholds consent, deeming them "guilty of a misdemeanor" and subject to a $1,000 a day fine; these penalties are expressly *not* limited to landlords, but to "[a]ny person or entity violating" it.  Complaint ¶ 32, citing §161.905 & .906.  "Under well-established doctrine, the threat of criminal and financial liability renders *any consent given to a search by any class member coerced and ineffective*."  *Id.* (emphasis added).  Paragraph 33 quotes *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973), that the Fourth Amendment requires "that consent not be coerced, by explicit or implicit means, by implied threat of covert force."  *Patel* ruled that a "hotel owner who refuses to give an officer access to his or her registry can be arrested on the spot.  The Court has held that business owners cannot reasonably be put to this kind of choice." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452 (2015), *citing Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523, 533 (1967) (unconstitutional to compel inspections "at the risk of a criminal penalty").

Here, as in *Patel*, if a tenant or landlord does not consent to an inspection, the Ordinance deems them "guilty" of a misdemeanor and subject to civil fine. Section 161.905-.906. This case cannot be distinguished from *Patel* and *Camara*. In their Complaint, Plaintiffs expressly challenged under Supreme Court authority every inspection conducted pursuant to the Inspection Ordinance.

## II.   THE COMPLAINT PROPERLY ALLEGES EVERY INSPECTION IS UNCONSTITUTIONAL, BOTH UNDER *BULACAN* AND *PATEL*.

### A.   Every Inspection Is Unconstitutional Under *Bulacan*.

The Complaint quotes the Ninth Circuit's recognition that while administrative searches are proper without probable cause, for that very reason they present "a vast potential for abuse." Complaint ¶ 19, *quoting U.S. v. Bulacan*, 156 F.3d 963, 967 (9th Cir. 1998). As a consequence, an administrative inspection program can be no broader than needed to accomplish the government's legitimate interest. *See U.S. v. McCarty*, 648 F.3d 820, 831 (9th Cir. 2011); *see also Bulacan*, 156 F.3d at 973 ("Searches conducted as part of a general regulatory scheme must further an administrative purpose, rather than further a criminal investigation"). In *Bulacan*, the Ninth Circuit ruled that the ordinance allowing unfettered searches of briefcases or purses at federal buildings was invalid in all applications because it allowed searches for more than the government's legitimate interest (guns and explosives), and therefore a search of a woman's purse for illegal drugs by the security of a federal building was unconstitutional. 156 F.3d at 967, 974.[1]

---

[1]  *Bulacan* affirmed the district court's limiting construction of the statute to render it constitutional. *Id.* at 974-975. Such limiting construction is impermissible if "such construction is plainly contrary to the intent of the drafters." *Id.* Here, § 161.405 plainly confers on the City official or his or her designees conducting the inspections "the powers of a law enforcement officer." Any construction that the City inspectors did not have "the powers of a law enforcement officer" when the express language of the Ordinance confers such powers would be "plainly contrary to the intent of the drafters."

-3-

The Complaint alleges that the Ordinance grants all city inspectors police powers to arrest and seize evidence. *See* Complaint, ¶ 4, *citing* §§161.405 & .410.01. Under the Ordinance, once every three years, approximately 650,000 private residences in the City of Los Angeles are being searched by city officials with police powers without probable cause. The Ordinance, as alleged in the Complaint, is therefore unconstitutional in each of its applications under *Bulacan*.

## B.  Every Inspection Is Unconstitutional under *Patel*.

If a landlord fails to pay the §161.352 inspection fee, or the landlord or renter refuses an inspection, he or she is deemed "guilty" of a criminal misdemeanor and is subject to a $1,000 a day fine, without any provision for a precompliance review, i.e., "review before a neutral decisionmaker." *Patel*, 135 S. Ct. at 2452. *See* §§161.905 ("Any person or entity violating this article shall be liable for a civil fine of up to $1,000 for each day the violation is committed"); .906 ("Any person violating any of the provisions, or failing to comply with any of the requirements of this article, shall be guilty of a misdemeanor"). There is no provision in the Ordinance for precompliance review before a neutral decisionmaker; hence, the Ordinance is facially unconstitutional under the express holding in *Patel*.[2]

An issue that requires addressing before one could conclude that *every* inspection is unconstitutional under *Patel* is that if an inspection is refused, the City has the discretion (but not the obligation) to obtain a CCP § 1822.50-.57 inspection warrant, which is issued *ex parte*. *See* § 161.601. In that regard, while on the one hand the *Patel* court ruled that precompliance review before a neutral administrator is required "in order for an administrative search to be constitutional," 135 S. Ct. at 2452, on the other hand it also states "police can compel [hotel operators] to turn

---

[2]  "While the Court has never attempted to prescribe the exact form an opportunity for precompliance review must take, the City does not even attempt to argue that [the challenged statute] affords hotel operators any opportunity whatsoever. [It] is, therefore, facially invalid." 135 S.Ct. at 2452.

1  [guest records] over if they have a proper administrative warrant — including one

2  that was issued *ex parte*," *id.* at 2454.  With regard to concluding that *every*

3  inspection is unconstitutional, Plaintiffs need to address two issues: (i) does the

4  *discretionary* choice of the City to seek a § 1822.50 *ex parte* administrative warrant

5  protect the Ordinance from facial attack; and (ii) how to give meaning to the Court's

6  seemingly inconsistent rulings that (a) precompliance review is constitutionally

7  required for an administrative search when the subject of the search objects and (b)

8  the police may nonetheless obtain materials protected by the Fourth Amendment

9  with *ex parte* administrative warrants.

10       For the Ordinance to conform to constitutional requirements, the Ordinance

11  would  have to be rewritten (which, as shown below, is not an adjudicative task, but

12  a legislative one) in two ways, which would resolve both the foregoing questions.

13  First, the statute would have to be rewritten to require the City, *if* it decided to

14  pursue a refusal to allow an inspection (and, of course, the City might in any

15  individual instance decide not to pursue a refusal), to obtain a CCP § 1822.50

16  administrative (and *ex parte*) warrant.  Otherwise, the possibility, if not likelihood,

17  of warrantless searches under the Ordinance would continue.  Second, the

18  Ordinance would have to be rewritten to conform to *Patel*'s seemingly inconsistent

19  dictates that when the party subject to a proposed search objects to it, precompliance

20  review before a neutral decisionmaker is constitutionally required, 135 S. Ct. at

21  2452, with its observation that police may obtain materials protected by the Fourth

22  Amendment with an *ex parte* administrative warrant, *id.* at 2454.  Taking a step

23  back, there is a ready cure that provides both.  The Ordinance could be rewritten to

24  require the City to provide (a) sufficient notice to the objecting landlord or occupant

25  that they may challenge the warrant before the judicial officer who issued it *ex*

26  *parte*, and (b) to provide sufficient time for the landlord or occupant to have a

27  meaningful chance to do so.  Section 161.601 requires the City to give only 24

28  hours, which is obviously insufficient time in most if not all cases for a landlord or

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO THE COURT'S
ORDER RE MOTION TO DISMISS CASE**

occupant to retain legal counsel and appear before the judicial officer who issued the warrant, especially if notice of the warrant was served on Friday afternoon through Sunday morning.  The particular language of the notice alerting the objecting landlord that they may seek a "precompliance hearing," and whether the appropriate notice period is five business days, or seven, or ten, is a legislative determination. Hence, the two seemingly discordant statements in *Patel* can be harmonized through legislative action; this Court, however, cannot rewrite the Ordinance to make it constitutional, as discussed in VII.B. below.

## III.   UNDER CONTROLLING CALIFORNIA LAW, THE ENTITY THAT RECEIVED FEES PURSUANT TO AN ILLEGAL STATUTE MUST REFUND THOSE FEES TO THE PLAINTIFFS WHO PAID THEM.

Federal law is silent as to what remedies are available for violations of civil rights under 42 *U.S.C.* § 1983. *See Carey v. Piphus*, 435 U.S. 247, 255 (1978).  42 *U.S.C.* § 1988 directs federal courts to rely on state law to fill in gaps in federal law so long as that state law is not "inconsistent with the Constitution and laws of the United States." *Robertson v. Wegmann*, 436 U.S. 584, 590 (1978.

California law is clear on the appropriate remedy when a plaintiff sues a California public entity for charging a fee or tax under an illegal statute:  a full refund of the fee or tax.  In *California State Outdoor Advertising Ass'n, Inc. v. Department of Transportation*, 2006 U.S. Dist. LEXIS 11174 (E.D. Cal. March 16, 2006), Caltrans raised an outdoor advertising fee from $20 to $92 without following the procedures of California's Administrative Procedures Act.   The plaintiffs sought to recover a full refund of the $72 illegal overcharge.  The court agreed in language directly applicable here: "California courts have held that where taxes or fees have been illegally levied and payment is effected by compulsion, the taxpayer is entitled to a refund." *Id.* at *15 (citing *Jordan v. Dept. of Motor Vehicles,* 89 Cal. Rptr. 2d 333 (1999) (affirming refund of unconstitutional smog impact fee to plaintiffs who brought suit); *Flynn v. City and County of San Francisco,* 115 P.2d  3 (1941); *Vitale*

*v. City of Los Angeles,* 57 P.2d 993 (1936); *Whyte v. State of California,* 294 P. 417(1930)).  Here, the fee is "effected by compulsion" because if the landlord does not pay the § 161.352 inspection fee, he or she is in violation of the Ordinance and subject to criminal and civil liability under sub-sections .905 and .906.

California's common law doctrine that the remedy for paying an illegal fee is for the government entity to refund it to the plaintiff(s) who paid it is consistent with federal law, both as a matter of decisional law, reviewed here, and on a straightforward application of controlling doctrine, reviewed in the next section. Federal courts have routinely ruled that a plaintiff who paid an illegal fee has standing to challenge the statute and recover the fee.  In *McKesson Corp. v. Division of Alcoholic and Tobacco, Department of Business Regulation of Florida*, 496 U.S. 18 (1990), a Florida tax was found illegal as it violated the Commerce Clause by favoring Florida growers of citrus and other agricultural crops.  Plaintiffs, who paid the tax, had standing to recover the illegal portion of it.  *Id.* at 51-52.  In *Whittington v. Maes*, 655 Fed. Appx. 691 (10th Cir. 2016), the plaintiff alleged that a mandatory e-filing fee charged to civil litigants violated his First Amendment right to be represented by counsel.  The defendant challenged on standing grounds.  The 10th Circuit disagreed:  "Paying a required fee establishes injury in fact."  *Id.* at 697.  In *Figueroa v. United States*, 466 F.3d 1023, 1027, 1029 (Fed. Cir. 2006), the Federal Circuit found that the plaintiff "has standing to challenge the legality of the fees that he paid."  In *Schultz v. Thorne*, 415 F.3d 1128, 1133, 1139 (10th Cir. 2005), the Tenth Circuit found that the plaintiff had standing to challenge a hunting fee license under the Equal Protection Clause because he had paid the fee.

In short, under controlling California authority, consistent with federal authorities, Plaintiffs in this §1983 action have standing to challenge the §161.352 inspection fees they are forced to pay under threat of criminal and civil liability and the appropriate remedy if they prevail is for the City to refund the fees paid.

**IV.   PLAINTIFFS HAVE STANDING BECAUSE THEY SUFFERED INJURY IN FACT CAUSALLY RELATED TO THE CONDUCT COMPLAINED OF WHICH WOULD BE REDRESSED BY THE REMEDY THEY SEEK.**

**A.   Standing Is Separate From The Merits.**

Finding that a plaintiff has standing is not a merits determination.  A plaintiff may have standing, but his claim may fail, including as a matter of law.  *See Schultz*, 415 F.3d at 1133, 1139; *Figueroa,* 466 F.3d at 1030-31.  Finding that the plaintiff has standing does not find the claim has merit, but that the plaintiff's allegations make him or her a proper party to litigate the merits.

**B.   Standing Turns On Three Constitutional Elements, All of Which Are Met Here.**

The three "constitutional elements of standing are . . . well-established." *Schultz*, 415 F.3d at 1133.

> First, the plaintiff must have suffered an "injury in fact" —
> an invasion of a legally protected interest that is (a)
> concrete and particularized, and (b) actual or imminent . . .
> Second, there must be a causal connection between the
> injury and the conduct complained of. . . .  Third, it must
> be likely, as opposed to merely speculative, that the injury
> will be redressed by a favorable decision.  *Lujan v.*
> *Defenders of Wildlife*, 5094 U.S. 555, 560-561 (1992).

*Id.*  Each of these three elements plainly are met here.  First, paying an illegal fee is a concrete and particularized "injury in fact."  Second, the payment of the fee is "causally related" to the "conduct complained of" — here, forcing landlords to pay fees expressly charged to fund residential inspections that Plaintiffs allege are illegal 100 percent of the time.  *See* §161.352 ("The fee will be used to finance the cost of inspection and enforcement").  Third, Plaintiffs' grievances would be redressed if the

-8-

Inspection Ordinance were modified to divest the city inspectors of police powers (curing unconstitutionality under *Bulacan*), to provide a meaningful opportunity for precompliance review (curing unconstitutionality under *Patel*) and the City were ordered to refund the fees it collected to fund the unconstitutional statute, as California law requires.

## V. PLAINTIFFS HAVE STANDING BECAUSE THE INSPECTIONS FEES EXPRESSLY FUND CONDUCT THEY ALLEGE IS UNCONSTITUTIONAL.

The Court's questions about Plaintiffs' standing could be read to be based on an underlying premise that when the plaintiff challenges a statute as illegal as to which they were forced to pay a fee, the plaintiff will have standing to recover the fee only if the *fee itself* is illegal, as opposed to some *other* aspect of the statute.  To the extent relevant, Plaintiffs would make four responses.

One, California law, controlling here, does not so require.

Two, Plaintiffs are aware of no case, and the City has cited none, that holds that a plaintiff may only recover compelled fees where the fee itself is illegal, as opposed to some other provision of the challenged enactment.

Three, Plaintiffs *do* challenge the .352 inspection fee, as it is expressly designed and can only be used to pay for the very illegal searches they challenge.

Four, precedent directly on point holds that when a fee or a charge was used to fund unconstitutional government conduct, the plaintiff is entitled to a refund, even where the illegality does not stem from the fee itself.  In *Joytime Distributors and Amusement Co. v. State of South Carolina*, 528 S.E. 2d 647 (S.C. Sup. Ct. 1999), the court found that the state legislature had unconstitutionally delegated legislative powers to the voters via a referendum with respect to certain limits on video game gambling machines.  The referendum also included a $50 one-time license fee on each licensed video gambling machine to defray of the cost of the referendum.  The South Carolina Supreme Court held that the delegation of

-9-

legislative powers to the voters violated South Carolina's constitution and that the plaintiff, who paid such one-time license fees, was entitled to a refund of the fees paid.  There is no suggestion in the opinion that had the *legislature* voted to adopt the one-time license fee, the fee would have been invalid; rather, as here, it was invalid because it was expressly intended to be used to fund unconstitutional government conduct.  528 S.E.2d at 656-57 ("Because we have held the referendum called for in Part II is unconstitutional, [the plaintiff] is entitled to a refund of the surcharge fees it has paid").

## VI.   THIS COURT WOULD HAVE TO MAKE NEW LAW TO FIND THAT LANDLORDS DO NOT HAVE STANDING TO CHALLENGE RENTAL INSPECTION ORDINANCES.

The City has cited no case where landlords were found not to have standing to challenge rental inspection ordinances.  The list of cases finding standing (or where standing was not challenged) is long; we have identified no contrary holdings.

In 2015 a federal district court applied *Patel* to find facially unconstitutional a "Rental Dwelling Code" that required a permit in order to rent their property.  *See* Amended Order Granting Plaintiffs' Motion for Partial Summary Judgment, *Baker v. City of Portsmouth*, Case 1:14-cv-00512-SJD (S.D. Ohio Octo. 1, 2015) ("Amended Order").  The plaintiffs were property owners, i.e., landlords.  The landlord alleged that the Rental Dwelling Code "violate[d] their Fourth Amendment rights by mandating warrantless inspections of their properties without probable cause."  *See* Amended Order at 2-4.  The court granted summary judgment in the plaintiff's favor on their Fourth Amendment claim.  *See id.* at 6-15.  The court also found the landlords could recover their permit fees because the City had wrongfully collected them.  *Id.* at 16-17.  In *Crook v. City of Madison*, 168 So. 3d 930, 935 (2015), the Supreme Court of Mississippi found that a landlord had standing to challenge a rental inspection ordinance, and ruled that the ordinance was facially unconstitutional.  In *Dearmore v. City of Garland*, 400 F. Supp. 2d 894, 901 (N.D.

-10-

Tex. 2005), the court found the property owner/landlord had standing to challenge an ordinance that required inspection of rental units at least once a year where, as here, the landlord would be fined if he did not consent to the search.  In *Brower v. Village of Bolingbrook*, 735 F. Supp. 768, 771-72 (N.D. Ill. 1990), the court denied the Village's motion to dismiss, finding that the building operator and the bank that was legal owner of the building both had standing to challenge a village ordinance that required landlords and property managers to consent to and pay for inspections whenever they rent to new residential tenants.  In *Sokolov v. Village of Freeport*, 420 N.E.2d 55, 56 (1981), the "appellants, owners of rental property within the Village of Freeport, commenced the present action for a declaration the rental ordinance is unconstitutional."  The Court of Appeals, the State of New York's highest court, held that "the rental permit ordinance of the Village of Freeport is unconstitutional insofar as it effectively authorizes and, indeed, requires a warrantless inspection of residential rental property."  *Id.* at 57.  In *Wilson v. City of Cincinnati*, 346 N.E.2d 666 (1976), the Supreme Court of Ohio held that a city ordinance requiring a property owner offering to sell a residential property  to either consent to a warrantless search or face the possibility of criminal penalty was constitutionally unenforceable as coercing a waiver of Fourth Amendment rights.

While all the foregoing cases support finding that the landlords have standing to challenge the Inspection Ordinance, *City of Portsmouth* is plainly on all fours with this case.  There, the landlords had standing to challenge a rental inspection scheme as inconsistent with *Patel*, and to recover the permit fee they paid.

**VII.   IT IS PREMATURE TO CONSIDER SEVERABILITY PRIOR TO A MERITS DETERMINATION, BUT IF THE COURT WERE TO DO SO, IT SHOULD FIND NON-SEVERABILITY.**

**A.   It Is Rarely Appropriate To Consider Severability Prior to a Merits Determination.**

-11-

"The normal rule," the Fifth Circuit stated in *National Federation of the Blind of Texas, Inc. v. Abott*, 647 F.3d 202, 211 (5th Cir. 2011), "is that severability comes into play only when a constitutional judgment on the merits has already proven unavoidable and has already been rendered" (quotation omitted).  As a consequence, it "is a rare case where addressing severability prior to the constitutional adjudication of a provision of a statute is appropriate." *Id.*

In *Harp Advert. Of Illinois, Inc. v. Village of Chicago Ridge*, 1992 WL 386481, at * 12 (N.D. Ill. March 13, 1992), at summary judgment the plaintiff argued that the unconstitutional aspects of the statute were so "intertwined" with the remainder that severability was not possible.  The defendant "argue[d] just the opposite." *Id*.  The court refused to decide at summary judgment.  "Until there is a final determination regarding the constitutionality of all the challenged provisions, the question of severability is premature." *Id.*

This case is no "rare" exception.  Plaintiffs allege the Ordinance, in all its applications, is unconstitutional under both *Bulacan* and *Patel*.  *See* Complaint ¶¶ 16-26 (*Bulacan*) & ¶¶ 27-34 (*Patel*).  Plaintiffs seek to recover all .352 inspection fees paid as the fees are used exclusively to fund the illegal inspections.  *See id.* ¶¶ 6, 35, 83(e); § 161.352.  Plaintiffs believe the Court, upon a merits determination, will agree on all three.  The City argues the opposite.  The Court should prudentially delay the severability determination until after it determines what parts of the challenged statute are constitutional *vel non*.

> ## B.     If the Court Reaches Severability, It Should Find Non-Severability Because It Would Have To Rewrite The Statute and the Unconstitutional Aspects Are Not "Wholly Independent" From The Fee But Instead "Inextricably Connected" To It.

If the Court reaches severability, it should find non-severability for two reasons.  One, the unconstitutional aspects of the Ordinance can not be cured without the Court engaging in legislative revision of the statute.  Two, because the

-12-

fee provision can only be used to fund the illegal searches, the fee provision is not "wholly independent" from but instead "inextricably connected" with the unconstitutional portions of the Ordinance.

### 1. The Court would have to engage in "judicial legislation" to save the statute.

Two "countervailing" principles are posed by severability. One is the need to avoid "judicial legislation" — finding severability by rewriting the challenged statute. *See Vivid*, 774 F. 3d at 573. On the other hand, because of separation of powers principles, courts "should avoid nullifying an entire statute when only a portion is invalid." *Id.* at 574. "Because a court may not use severability as a fig leaf for judicial legislation, courts have fashioned limits on when a statute may be severed." *Id.* The touchstone for severability is the constitutional and unconstitutional parts of the statute must be "'wholly independent of each other.'" *Id.*, quoting *Brockett v. Spokane Arcades, Inc.,*, 472 U.S. 491, 502 (1985).

"In keeping with federalism principles, the severability of a local ordinance is a question of state law." *Id.* (quotation omitted). Under California law, that the challenged statute contains a severability clause only "establishes a presumption in favor of severance." *Id.* For the presumption to hold, the invalid provision must be "grammatically, functionally, and volitionally separable." *Id.* Here, the presumption of severability is overcome because the *Patel* invalidity is not grammatically separable and the fee is not functionally separable.

Grammatical separability asks whether the court can strike the invalid portions and be left with an enforceable provision. *Id.* at 574-75. The Ordinance has both grammatically separable and inseparable invalid portions. The *Bulacan* problem (city inspectors possessing police power) can be cured by striking §161.405 & .410.1. Complaint inspections could be cured by striking §161.603.

To cure the *Patel* problem in §161.601, however, would require both legislative judgment and rewriting. The relevant paragraph follows, showing the

1  invalid portions that can be stricken, highlighting suggested language that would be

2  required, and showing with bracketed question marks legislative judgments that

3  would have to be made.

4              If entry is refused or cannot be obtained, the General

5              Manager shall have recourse to ~~every remedy provided by~~

6              ~~law to secure lawful entry and inspect the premises,~~

7              ~~including but not limited to~~ securing[e] an inspection

8              warrant pursuant to California Code of Civil Procedure

9              Sections 1822.50 through 1822.57 should the General

10             Manager choose to pursue the inspection. The General

11             Manager shall provide notice that a warrant has been

12             issued to both the owner and the occupant at least ~~24~~ [?]

13             business days before the warrant is executed, unless the

14             judge finds that immediate execution is reasonably

15             necessary in light of ~~the~~ [exigent] circumstances shown.

16             The notice shall include the following language informing

17             the owner or occupant that he or she has the right to seek a

18             review from the judicial officer who issued the warrant

19             before the inspection goes forward:  [?]

20      Twenty-four hours is insufficient notice in virtually all circumstances for the

21  objecting owner or occupant to consult counsel and appear before the judicial officer

22  who approved the warrant.  The appropriate time must be sufficient to make

23  precompliance review meaningfully available.  Is that five days?  Seven?  Ten?

24  That is a legislative judgment.  To make the possibility for prejudgment review

25  meaningful, the owner or occupant would also have to be informed he or she had the

26  right, *prior to the inspection going forward*, to a hearing before the judicial officer

27  who issued the warrant.  That is a delicate strategic issue as well as a legal one: the

28  notice must be sufficient to communicate the right, but balanced enough not to

-14-

1  trigger automatic objections.  That, too, is a legislative judgment.  Because the

2  invalid *Patel* portions of the statute cannot be cured absent "judicial legislation," the

3  Ordinance is not severable.

4     **2.     The Ordinance is non-severable because the fee is not**

5         **"wholly independent" but instead "inextricably connected"**

6         **with the very searches that render it unconstitutional.**

7     The Ordinance is also non-severable because the .352 inspection fee is

8  "inextricably connected" with the unconstitutionality of the Ordinance and hence not

9  "functionally severable."  *Vivid*, 774 F.3d at 576 (functional severability requires

10 that the invalid portions ***not be*** "inextricably connected" to the remainder of the

11 statute).  The inspection fee is expressly and inextricably "connected" to the

12 unconstitutional searches because its sole purpose is to fund them.  Case law holds

13 when a fee is directly connected to the aspect of the ordinance that is illegal, the

14 statute is non-severable.  In *Georgia Ass'n of Educators v. Harris*, 749 F. Supp.

15 1110, 1117-18 (1990),  the court held a drug test requirement violated the Fourth

16 Amendment rights of applicants for state jobs who were required to take the test as a

17 condition for employment, and found the fee charged to pay for the test could not be

18 severed because its only purpose was to pay for the portion of the statute that was

19 illegal.  *Harris* is on all fours with the facts of this case.  Similarly, in *Palmer v. City*

20 *of Los Angeles*, 96 Cal. Rptr. 3d 875 (2009), the City adopted a rent control

21 ordinance that required landlords to *either* rent a certain number of units at

22 "affordable" rates *or* pay an "in lieu of fee."  The court held the "affordable"

23 requirement was preempted by state law and the "in lieu of fee" could not be

24 severed because "the in lieu provision . . . exists only within the context of the

25 preempted affordable housing."

26                          <u>Conclusion</u>

27     Plaintiffs respectfully submit that the Court should deny the City's motion to

28 dismiss in all respects.

-15-

1 | Respectfully submitted,

2

3 | DATED:  May 30, 2017                    QUINN EMANUEL URQUHART &
4 |                                                             SULLIVAN, LLP

5

6 |                                                             By _____
7 |                                                                   Dominic Surprenant
8 |                                                                   Attorneys for Plaintiffs BRANDI GARRIS,
                                                                        JOHN SWITZER and JASON TEAGUE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-16-